Vincent W. Davis, Esq. (SBN 125399)
Daniel C. Sharpe, Esq. (SBN 267075)
Law Offices of Vincent W. Davis & Associates
150 N. Santa Anita Avenue, Suite 200
Arcadia, CA 91006
Phone: (626) 446-6442
Facsimile: (626) 446-6454

Attorneys for Plaintiffs

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| NATIA SAMPSON<br><br>                          PLAINTIFF<br><br>    v.<br><br>COUNTY OF LOS ANGELES, by and through THE LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES; PHILIP L. BROWNING, an Individual; NICOLE DAVIS, an Individual; KILENE SHORT, an Individual; AHMED OBAKHUME, an Individual; DAWNA YOKOYAMA, an Individual; GERALDO IBARRA, an Individual; and DOES 1 through 50, inclusive,<br><br>                          DEFENDANTS | No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of Civil Rights Under 42 U.S.C. § 1983 – 1st Amendment – Interference with Familial Relations<br><br>2. Violation of Civil Rights Under 42 U.S.C. § 1983 – 1st Amendment – Retaliation<br><br>3. Violation of Civil Rights Under 42 U.S.C. § 1983 – 14th Amendment Discrimination<br><br>4. Violation of Civil Rights Under 42 U.S.C. § 1983 –14th Amendment – Violation of Procedural and Substantive Due Process<br><br>5. Violation of Civil Rights Under 42 U.S.C. § 1983, 14th Amendment – Detention of Minor Child<br><br>6. Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Liability |

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon the United States District Court for the Central District of California, as Plaintiffs assert claims herein that are derived from the United States Constitution and the laws of the United States, the amount in controversy exceeds $75,000, and the events that give rise to litigation occurred in and around the County of Riverside. This Honorable Court therefore has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## PARTIES

2.      Plaintiff NATIA SAMPSON (hereinafter "Plaintiff" or "SAMPSON") is an individual, competent adult, who, during all times relevant as described in more detail below, engaged with the Los Angeles County Department of Children and Family Services ("DCFS"), by and through numerous employees, representatives, or agents of the same, in and around Los Angeles County, both individually and as the legal guardian of the minor child H.S.

3.      Defendant COUNTY OF LOS ANGELES is a local public entity organized under the laws of the State of California (hereinafter referred to as "COUNTY OF LOS ANGELES" or "COLA").  The Los Angeles County Department of Children and Family Services (hereinafter referred to as "DCFS" or "the Department") is an agency of Defendant COUNTY OF LOS ANGELES designated to administer laws

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

and programs relating to protective services for children, foster care, and adoptions. DCFS operates under the policy direction of the Los Angeles County Board of Supervisors and the California Departments of Social Services and Health Services.

4.     At all times relevant herein, DCFS employed Defendant AHMED OBAKHUME (hereinafter referred to as "OBAKHUME") as a Social Worker charged with the investigation, monitoring, and management of juvenile dependency matters, which included – at certain times as stated below – the matter of the minor child, H.S. OBAKHUME was an individual residing, on information and belief, in the County of Los Angeles, and at all times relevant herein was an officer, agent and employee of Defendant COLA and DCFS. Defendant OBAKHUME is sued herein in both his individual capacity and in his official capacity as an employee of the County of Los Angeles.

5.     At all times relevant herein, DCFS employed Defendant KILENE SHORT (hereinafter referred to as "SHORT") as a Social Worker charged with the investigation, monitoring, and management of juvenile dependency matters, which included – at certain times as stated below – the matter of the minor child, H.S. SHORT was an individual residing, on information and belief, in the County of Los Angeles, and at all times relevant herein was an officer, agent and employee of Defendant COLA and DCFS. Defendant SHORT is sued herein in both her individual capacity and in her official capacity as an employee of the County of Los Angeles.

6.    At all times relevant herein, DCFS employed Defendant NICOLE DAVIS, (hereinafter referred to as "DAVIS") as a Supervisor charged with the supervision, oversight, and management of the DCFS office located at 8300 South Vermont Avenue, 4th Floor, Los Angeles, California 90044, known as the "Vermont Corridor." At all times relevant herein, DAVIS was the direct supervisor of Defendants OBAKHUME and SHORT, and was responsible in her official capacity as a DCFS supervisor to monitor their actions and assist in the discharge of their duties on behalf of COLA. Defendant DAVIS is sued herein in both her individual capacity and in her official capacity as an employee of the COLA.

7.    At all times relevant herein, DCFS employed Defendant DAWNA YOKOYAMA, (hereinafter referred to as "YOKOYAMA") as a Deputy Director, and was charged with the oversight, management, and administration of DCFS, and in her capacity was responsible for supervision of Defendants – including Defendant DAVIS in particular – and acted at all times relevant as a policymaker within Defendant COLA. Defendant YOKOYAMA is sued herein in both her individual capacity and in her official capacity as an employee of Defendant COLA.

8.    At all times relevant herein, DCFS employed Defendant GERALDO IBARRA, (hereinafter referred to as "IBARRA") as an Assistant Regional Administrator, and was charged with the oversight, management, and administration of DCFS, and in his capacity was responsible for supervision of Defendants – including Defendant

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

DAVIS in particular – and acted at all times relevant as a policymaker within Defendant COLA. Defendant IBARRA is sued herein in both his individual capacity and in his official capacity as an employee of Defendant COLA.

9.      At all times relevant herein, DCFS employed Defendant PHILIP L. BROWNING, (hereinafter referred to as "BROWNING") as a Director, and was charged with the oversight, management, and administration of DCFS, and in his capacity was responsible for supervision of Defendants – including  Defendants DAVIS and YOKOYAMA in particular – and acted at all times relevant as a policymaker within Defendant COLA. Defendant BROWNING is sued herein in both his individual capacity and in his official capacity as an employee of Defendant COLA.

10.      Plaintiff is informed and believes and thereon allege that Defendants, Does 1 through 50, inclusive (hereinafter referred to as "Does"), are now and at all times herein mentioned in this Complaint were individuals and residents or were entities – either governmental or otherwise – operating and/or doing business in and around the County of Los Angeles, State of California, and were in some manner employed by and acting within the scope of their employment on behalf of Defendant COLA, whether by and through DCFS or some other means.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

11.    Defendant COLA was at all times alleged herein to be responsible for the appointment and promotion of employees of COLA, and for the supervision, training, instruction, discipline, control, and conduct of said employees.

12.    At all times alleged herein, Defendant COLA had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, the laws of the State of California, and the laws of the local municipalities.

13.    The unknown named defendants – identified herein as "Doe" Defendants 1 through 50, include, but are not limited to, unknown social workers, supervisors, managers, investigators, deputy directors, who participated in, approved of, or otherwise acquiesced in the actions and misconduct of the other named defendants as described herein, resulting in the deprivation of Plaintiff's civil rights and injuries to her person, as is described below. These unknown defendants include policymakers that created, fostered, acquiesced in, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and his injuries.

14.    Plaintiff is ignorant of the true names and capacities of these Doe Defendants, though all are believed to have been employed by COLA, or acting in concert with

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

other named defendants and in their capacity were acting as state actors, but alleges that each such defendant was in some intentional or negligent manner responsible for the injuries suffered by Plaintiff.

15.    Defendants, and each of them, performed the wrongful acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

16.    At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency.

## FACTS COMMON TO ALL CLAIMS

17.    Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count of this Complaint.

18.    Plaintiff was previously deprived of her interests protected by the Constitution and/or laws of the United States of America, as well as California, and suffered injuries to her person, and such deprivation was caused by defendants – by commission and omission – while defendants acted under color of law.

19.    All acts and/or omissions perpetrated by each defendant, except any governmental entity defendant or any defendant only in their official capacity, were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

deliberate indifference to the rights of Plaintiff, and were done so despicably and with evil motive and/or intent.

20.    In the summer of 2014, Plaintiff was first contacted regarding the whereabouts of H.S., who was and is Plaintiff's biological niece and daughter of Plaintiff's brother, Ronald Sampson. Plaintiff was informed that H.S.'s parents were incarcerated and H.S. had been removed from their care by Defendants COLA and DCFS, and that Ronald Sampson very much desired that H.S. be placed in the custody of a family member such as Plaintiff rather than in foster care.

21.    As a result, Plaintiff began contacting DCFS regarding the status of H.S. and attempted to arrange a visit with H.S.; Plaintiff was given the contact information for the DCFS office located at or near 8300 South Vermont Avenue, 4th Floor, Los Angeles, California 90044 (hereinafter "Vermont Corridor"), and instructed to leave a message with Defendant OBAKHUME.

22.    Plaintiff left a voicemail message with Defendant OBAKHUME, which was not returned. Over the course of several days, Plaintiff left additional voicemail messages for Defendant OBAKHUME, all of which identified Plaintiff, the purpose of her call, and her contact information, and none of which were returned.

23.    Plaintiff eventually called the Vermont Corridor and requested to speak with a supervisor in light of Defendant OBAKHUME's failure to return her calls; when

Plaintiff did so, she was immediately transferred to Defendant OBAKHUME, who demanded to know why Plaintiff was asking for his supervisor.

24.    While on the phone with Defendant OBAKHUME, Plaintiff explained her family connection to H.S., as well as her interest in visiting H.S. but also expressed an extreme unwillingness to interact with H.S.'s biological parents or the family of the biological mother due to her negative relationship with them based on prior history.

25.    During this phone call, Defendant OBAKHUME repeatedly interrupted Plaintiff, stating that he was suspicious of her story because, he alleged, Ronald Sampson denied any living relatives that could serve as a caregiver to H.S., and would not agree to arrange any visit until Plaintiff completed a background check and live scan, which Plaintiff agreed to do.

26.    Plaintiff scheduled an appointment to meet with Defendant OBAKHUME at the Vermont Corridor, with the understanding that the meeting would be the start of the background check Defendant OBAKHUME required. During the meeting, Plaintiff discussed her family connection to H.S., that she was married – but separated – and had four children, that Plaintiff lived in Nevada, and that her willingness to visit with H.S. was conditional on not having any interaction with H.S.'s biological parents due to their drug use and previous problems her family had experienced with them, resulting in Plaintiff not having any substantive interaction with her brother for approximately two (2) years.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

27.     During the meeting, Defendant OBAKHUME explained to Plaintiff that a court had approved DCFS' request to terminate the parental rights of H.S.' biological parents, that H.S. was being considered for adoption, and that it was the policy of DCFS to place a child with a biological relative instead of a foster home when possible, and the court had no intention of allowing H.S. to return to her biological parents.

28.     Plaintiff was surprised by this representation, and requested that Defendant OBAKHUME show her paperwork regarding the legal status of H.S.; Defendant OBAKHUME, though, asserted Plaintiff was not allowed to view such documentation, that Plaintiff needed to trust him, and that if Plaintiff decided to relocate to California and move forward as a caregiver for H.S., then Defendant OBAKHUME would provide all the documents upon approval by DCFS.

29.     During the meeting, Defendant OBAKHUME made multiple comments regarding his pleasant surprise regarding Plaintiff SAMPSON's physical appearance, and placed his hand on top of Plaintiff's hand during the discussion; when Plaintiff removed her hand from his and pointedly asked whether that was part of the process by DCFS, Defendant OBAKHUME responded that Plaintiff was "a feisty one" and to let him do his job.

30.     In or around September of 2014, after Plaintiff's background check had apparently cleared, Plaintiff had her first visit with H.S., and spoke at length with

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

existing care provider Irene Ball. During the visit, Plaintiff and H.S. interacted and bonded. Also during the visit, Ms. Ball informed Plaintiff that Ms. Ball couldn't serve as the caregiver to H.S. much longer due to the strain of the repeated negative interactions with the biological parents.

31.     At the end of the visit between Plaintiff and H.S., Defendant OBAKHUME requested to speak with Plaintiff; once Ms. Ball and H.S. departed, Defendant OBAKHUME asked Plaintiff if she had made up her mind. Plaintiff took this to mean about acting as a caregiver to H.S., and Plaintiff expressed her positive interactions with H.S. but concerns about the negative interactions with the biological parents of which Ms. Ball spoke earlier. Defendant OBAKHUME responded that he was not asking about H.S. but instead about Plaintiff's marital status. Defendant OBKAHUME went on to say that he could be of much more assistance to Plaintiff if she made her separation from her husband permanent.

32.     Plaintiff immediately told Defendant OBAKHUME that she was uncomfortable with such remarks and attempted to walk out of the room. Defendant OBAKHUME grabbed Plaintiff's hand, apologized for his comment, then asked her to sit down and discuss H.S.; Plaintiff reluctantly agreed to do so.

33.     Defendant OBAKHUME informed Plaintiff that H.S.'s biological parents' rights were being terminated by the courts, but that the courts preferred a biological family placement over an adoptive placement, and urged Plaintiff to consider being

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

the caregiver and legal guardian of H.S.; Plaintiff responded that she needed to consider this carefully, but scheduled another visit with H.S. approximately two weeks later.

34.    Over the next several weeks, Plaintiff repeatedly communicated with Defendant OBAKHUME regarding the procedures for becoming H.S.'s caregiver, including costs for care of H.S., relocation costs for Plaintiff to move to California, and Plaintiff's adamant desire to avoid any contact whatsoever with H.S.'s biological parents or the family of the biological mother. Defendant OBAKHUME repeatedly assured Plaintiff that DCFS would provide funding and childcare for H.S. near Plaintiff's home if she moved to California, and that any approved calls or visitation by the biological parents would be conducted through DCFS and a social worker would be responsible for picking up H.S. and returning her, so that Plaintiff would never have to interact directly with the biological parents.

35.    During these conversations, Defendant OBAKHUME repeatedly referenced his pending medical leave of absence, and that Plaintiff had to make a decision prior to said absence, asserting that Plaintiff may not be as successful with whichever social worker would take over for him during that time.

36.    In or around October of 2014, Plaintiff arrived at the Vermont Corridor for another visit with H.S. When Plaintiff arrived, though, Defendant OBAKHUME called her on her cellphone and requested that she meet with him in a parking garage

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

12

rather than in the Vermont Corridor office. Plaintiff reluctantly agreed. Upon

meeting, Defendant OBAKHUME started complimenting Plaintiff on her physical

appearance, then motioned towards a silver/gray BMW and requested that Plaintiff go

for a ride with him. Plaintiff asserted that she came to visit with H.S., nothing more.

Plaintiff eventually agreed to follow him in her own vehicle.

37.     Defendant OBAKHUME led Plaintiff to a home near the intersection of

Central and 80th, then back to the Vermont Corridor without getting out of his

vehicle. Defendant OBAKHUME stated to Plaintiff that he wanted to show her the

home of Ms. Ball, where H.S. resided, so that Plaintiff could know that she should

trust him. Plaintiff did not respond and instead waited for her visit with H.S.

38.     In or around November of 2014, Defendant OBAKHUME contacted Plaintiff

and stated that H.S. would more likely than not be placed with an adoptive family due

to the need to close out the case. Plaintiff asked Defendant OBAKHUME what he

was asking her to do, and Defendant OBAKHUME responded that he was simply

letting Plaintiff know.

39.     After discussing the matter with friends and family members, and based on the

repeated assurances by Defendant OBAKHUME regarding no contact with the

biological parents as well as assistance with costs related to the care of H.S., Plaintiff

contacted Defendant OBAKHUME and informed him that Plaintiff had decided to be

considered as a caregiver for H.S. Defendant OBAKHUME stated that he was pleased

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

with Plaintiff's decision, then discussed with Plaintiff the need for a home inspection, purchases that Plaintiff would need to make, and the importance of keeping receipts for reimbursement by DCFS.

40.     Plaintiff then moved into the residence of her mother, Veda Scott, who lived in san Bernardino County and is employed by Defendant COLA through the Department of Social Services, in order to have a local residence for the care of H.S.

41.     Shortly thereafter, Defendant OBAKHUME conducted a home inspection, where Plaintiff and her mother were present. During the home inspection, Defendant OBAKHUME made several comments regarding the "adjustment" of Plaintiff moving back into her mother's residence as well as how Defendant OBAKHUME could be of more assistance to Plaintiff and her concerns once Plaintiff made her spousal separation a permanent divorce. Plaintiff advised Defendant OBAKHUME to finish his inspection and leave.

42.     Given the nature of Defendant OBAKHUME's comments, which repeatedly connected Plaintiff's divorce, his compliments on her physical appearance, and references to his own ability to assist in the process, Plaintiff did not immediately report his statements for fear that it would negatively impact the process of becoming a caregiver for H.S.

43.     On or about November 20, 2014, Plaintiff attended a court hearing based on the representation of Defendant OBAKHUME that the court simply wanted to "put a face

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

with my name." At the hearing, which lasted only a few minutes on the record, the Court ordered that H.S. be placed in Plaintiff's care. Plaintiff was completely surprised by the decision, and was shocked and disappointed by being misled by Defendant OBAKHUME, but was told that if she did not take H.S. that day, there may not be an opportunity to place H.S. with Plaintiff again in the future.

44.    Plaintiff agreed to take H.S. that day, but reiterated her concerns about contact with the biological parents or the family of the biological mother, and requested a copy of the court's order. Plaintiff was instructed that she should follow up with DCFS at the Vermont Corridor for both.

45.    Plaintiff immediately contacted Defendant OBAKHUME at the Vermont Corridor, who admitted that he knew the court hearing was to determine if Plaintiff should be the care provider for H.S., and had in fact already informed Ms. Ball that H.S. would be transferred to Plaintiff's care. Defendant OBAKHUME then requested that Plaintiff meet him at his office at the Vermont Corridor.

46.    When Plaintiff arrived, Defendant OBAKHUME again instructed Plaintiff to meet him in the parking garage rather than his office. Plaintiff did so. During this meeting, Plaintiff expressed her frustration at being lied to by Defendant OBAKHUME, who simply laughed and told Plaintiff that "at the end of the day" his job was to place H.S., and he accomplished that. Defendant OBAKHUME again asked Plaintiff about her marriage, reminding her that he could be of more assistance

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

if Plaintiff were single, and offered to give Plaintiff a ride to pick up H.S. Plaintiff backed away, stating that she was only there for H.S. and not for Defendant OBAKHUME. Defendant OBAKHUME responded, "Oh, it's like that, Ms. Sampson?"

47.     Later on November 20, 2014, Plaintiff arrived with her mother to the home of Ms. Ball to pick up H.S.; Defendant OBAKHUME was present. Plaintiff was not provided with any formal documentation or paperwork, only a plastic bag of H.S.'s clothes (which were too small for H.S.) and a dirty car seat. When Plaintiff and her mother inquired about paperwork, including a medical card for H.S., Ms. Ball admitted that she never received the proper documentation for any DCFS employees, only the identification number for H.S. Defendant OBAKHUME immediately assured Plaintiff that he would provide the proper documentation in approximately a week.

48.     Starting on November 21, 2014, Plaintiff repeatedly reached out to Defendant OBAKHUME regarding medical insurance documentation and paperwork related to the transfer of H.S. to Plaintiff's care. Defendant OBAKHUME did not return any of Plaintiff's numerous phone calls. When Plaintiff contacted the Vermont Corridor, explaining her repeated attempts to reach Defendant OBAKHUME and requesting to speak with a supervisor, Plaintiff was consistently transferred back to Defendant OBAKHUME's voicemail system.

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

49.    Shortly after taking H.S. into her custody and care, Plaintiff started receiving calls from H.S.'s maternal grandmother, requesting to visit with H.S. Plaintiff left several additional messages with Defendant OBAKHUME, asking how the maternal grandmother got Plaintiff's contact information, especially in light of Plaintiff's request that she have no contact with the biological parents or the family of the biological mother. Plaintiff eventually received a text message from Defendant OBAKHUME, who asserted that Plaintiff was required to monitor the maternal grandmother's visit. Plaintiff immediately called Defendant OBAKHUME again, but he would not answer his phone.

50.    On or about December 2, 2014, Plaintiff texted Defendant OBAKHUME, asking for follow-up on H.S.' medical card. Defendant OBAKHUME responded to the text, insisting that he was working on it but that Plaintiff should simply take H.S. to the emergency room and send him the bill if there was a problem.

51.    Defendant OBAKHUME demanded that Plaintiff call a specific number and schedule a visit with H.S.'s maternal grandmother. Plaintiff did so, and eventually confirmed with the maternal grandmother that Defendant OBAKHUME provided Plaintiff's personal contact information despite her numerous requests.

52.    On or about December 11, 2014, Plaintiff met with ASFA representative LaShawn Jones, who inspected Plaintiff's residence and discussed Plaintiff's responsibilities, and H.S.'s medical appointments. During their conversation, Ms.

Jones expressed her surprise that Plaintiff decided to care for H.S. in California instead of Nevada, and inquired as to why Plaintiff made that decision. Plaintiff responded that Defendant OBAKHUME told her several times that she could not care for H.S. unless she became a California resident. Ms. Jones assured Plaintiff that was a blatant lie, and encouraged Plaintiff to complain to Defendant OBAKHUME's supervisor regarding that as well as the failure to provide medical documentation or proof that H.S. was ordered to be in Plaintiff's care.

53.    Over the course of their conversation, Ms. Jones provided Plaintiff with numerous specific pieces of information that Defendant OBAKHUME either failed to provide or otherwise purposefully withheld, including clothing allowances and other reimbursements Plaintiff was eligible to receive, as well as the name and contact information for Defendant OBAKHUME's supervisor, Defendant DAVIS.

54.    At the end of the conversation, Ms. Jones informed Plaintiff that she could not pass home inspection due to the lack of results on Plaintiff's background check for the State of Nevada, as well as the need to run a background check on Plaintiff's husband and her children. Ms. Jones explained that should have been done previously, but there were no notes about Plaintiff being married or having other children. Plaintiff confirmed that Defendant OBAKHUME was very aware that Plaintiff was married, given his repeated encouragement that she end her marriage.

55.     Over the next ten (10) days, Plaintiff left multiple messages with Defendant DAVIS, both via voicemail and through an administrative employee, Ingrid Byfield, but Defendant Davis did not call Plaintiff back.

56.     On or about December 22, 2014, Plaintiff spoke with Assistant Regional Administrator Scanda Giles, an employee DCFS at the Vermont Corridor, wherein Plaintiff expressed her concerns about the unprofessional and serious misconduct of Defendant OBAKHUME and her inability to reach Defendant DAVIS. Ms. Giles put Plaintiff on hold and Defendant DAVIS was eventually connected to Plaintiff.

57.     During their phone conversation, Defendant DAVIS denied receiving any of the several voicemail messages or any of the messages left with administrative staff, and suggested she could not do anything about Defendant OBAKHUME while he was on a medically-based leave of absence, but would follow up once he returned to work. Defendant DAVIS reiterated that she was just hearing about this for the first time – despite all of Plaintiff's messages – and asked for time to resolve the issues. During the same call, Ms. Giles promised Plaintiff that she would receive an overdue clothing allowance for H.S. and offered to directly assist in any future issues.

58.     On or about December 23, 2014, Plaintiff communicated with social worker Michael Jules, an employee of DCFS who represented that he was taking over as the social worker while Defendant OBAKHUME was on a leave of absence, and scheduled time for a visit with Mr. Jules.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

59.    On or about December 26, 2014, Mr. Jules met with Plaintiff and H.S. for the first time; during the visit, Mr. Jules apologized for being late and admitted he had not had enough time to review the file. Plaintiff then discussed all of her prior requests she had made to Defendant OBAKHUME regarding medical documentation and funding requests. During the conversation, Plaintiff admitted to Mr. Jules that he made her more comfortable than Defendant OBAKHUME because he did not engage in the behavior that Defendant OBAKHUME had. When Mr. Jules heard Plaintiff discuss the repeated instances of inappropriate romantic advances by Defendant OBAKHUME, Mr. Jules encouraged Plaintiff to complaint to the supervisor, Defendant DAVIS. However, Mr. Jules bluntly informed Plaintiff that she should not be surprised if Defendant DAVIS ignored her complaints, asserting that Defendant DAVIS was known not to do her job and often pretended not to be aware of the chaos at the Vermont Corridor. Mr. Jules encouraged Plaintiff to take her complaints up to Defendant DAVIS and then to ARA Giles, but requested that Plaintiff "leave his name out of it" because he "didn't need the B.S."

60.    Over the course of the next several weeks, Plaintiff experienced serious difficulty in interacting with Defendants, including social worker Michael Jules, Defendant OBAKHUME upon return from his leave of absence, as well as Defendant DAVIS or ARA Giles. Plaintiff would repeatedly leave messages over the course of several days and would not get any response; Plaintiff would receive text messages

COMPLAINT FOR DAMAGES

from Defendant OBAKHUME regarding whether or not Plaintiff was attempting to look up Defendant OBAKHUME on social media, which she denied and interpreted as an attempt to engage in a personal discussion unrelated to H.S. or the numerous issues surrounding medical documentation and other records.

61.    On or about February 25, 2015, Defendant DAVIS called Plaintiff on a blocked number, reaching out to her for the first time since December 22, 2014. During the call, Plaintiff complained regarding the regular sexual harassment she faced from Defendant OBAKHUME. Defendant DAVIS responded that she would not address those concerns because Defendant OBAKHUME was "one of her best" social workers and the only one that was willing to work on H.S.'s case due to the negative interactions with the biological parents. After the call with Defendant DAVIS, Plaintiff immediately called and left a message with ARA Scanda Giles, hoping to communicate the sexual harassment of Defendant OBAKHUME to someone that would appropriately address her concerns; Ms. Giles never returned her call.

62.    Over the next several weeks, Plaintiff received a barrage of calls, texts, and unannounced visits from the biological parents of H.S., who represented that Defendants were not scheduling visits between them and H.S., and were in fact telling the biological parents that Plaintiff was refusing to cooperate with parental visits, which was false.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

63.    Plaintiff repeatedly left messages with DCFS Social Worker Michael Jules, requesting that he return the biological parents' calls and schedule a parental visit so that Plaintiff would not be forced to communicate with the biological parents, which was inappropriate and counter to what Defendant OBAKHUME had repeatedly communicated to Plaintiff.

64.    On or about March 30, 2015, during a home visit, DCFS Social Worker Michael Jules stated to Plaintiff that he finally had an opportunity to review H.S.'s file, and saw things of which he did not want to be involved. When Plaintiff asked what Mr. Jules meant, he responded that there seemed to be a lot of information missing and he did not want to be held responsible for the actions of others. Mr. Jules then stated, "You are married, right" When Plaintiff responded that she was in fact married, Mr. Jules responded, "Yep, I do not want no part of this." Mr. Jules refused to elaborate any further.

65.    During the first half of 2015, Plaintiff repeatedly sent several text messages, left several voicemails, and otherwise attempted in good faith to follow up with Defendants regarding the "F rate" classification for H.S. and funding reimbursement pursuant to the laws, regulations, and procedures governing the same. These attempts were ignored by Defendants.

66.    On or about April 30, 2015, the biological father, Ronald Sampson, contacted Plaintiff because he was trying to meet with DCFS Social Worker Michael Jules at

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

the Vermont Corridor office to get bus tokens to allow him to travel to the monitored parental visit at the Pamona office (where Plaintiff and H.S. were in preparation for a parental visit), as well as to get a permanent visitation schedule for H.S.; Ronald Sampson represented he was in the lobby of the Vermont Corridor office, and no one would meet with him. Plaintiff contacted DCFS Social Worker Michael Jules, who suggested that Ronald Sampson was lying and wasn't really in the lobby. When Plaintiff relayed that to Ronald Sampson, he expressed bewilderment, saying he was standing in the lobby the whole time.

67.     Plaintiff then received a call from Mr. Jules, who told Plaintiff that he could not stand H.S.'s biological parents, and would do whatever it took to be removed from her case immediately. Plaintiff asked Mr. Jules to explain further, but he only responded that he would likely not be visiting with H.S. the same day as planned. Shortly thereafter, Plaintiff received a call from Mr. Jules with Defendant DAVIS on the line as well. In this subsequent call, Mr. Jules stated that he felt threatened by Ronald Sampson and that Defendant DAVIS was afraid for Mr. Jules' life, and instructed him not to leave the building. Plaintiff reiterated that she had been on the phone with Ronald Sampson throughout, that he sounded calm, and that she did not understand how Mr. Jules could have been fearful of Ronald Sampson given that he had previously represented that he did not see him in the lobby and had no interaction with him. Defendant DAVIS cut off Plaintiff and asserted that, as a supervisor, it was

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

more important for her to protect social workers than for Plaintiff to "figure things out," and that Mr. Jules would no longer be the acting social worker for H.S.'s case.

68.     In or around early May of 2015, Plaintiff was contacted by Defendant SHORT, who explained that she was the new social worker assigned to H.S.'s case, and that she needed to do an immediate visit – despite not having reviewed the case file – because there was no home visit in April.

69.     Plaintiff arranged for a home visit with Defendant SHORT, who appeared confused and unsure of many aspects of H.S.'s case during the visit. At that time, Plaintiff acknowledged the numerous problems she had with Defendant DCFS, including the sexual harassment of Defendant OBAKHUME, the failure of ARA Giles to return any calls, the failure of Mr. Jules to schedule a parental visit despite repeatedly promising that he would monitor parental visits at the DCFS office, and the lack of paperwork regarding H.S.'s "F-rate" which was causing extreme financial strain on Plaintiff and her mother. In response, Defendant SHORT encouraged Plaintiff to continue to report Defendant OBAKHUME's sexual harassment, promised that she would arrange parental visits through the DCFS office that she would personally monitor, and would look into the hold-up on reimbursement paperwork for Plaintiff.

70.     A few days after the initial home visit by Defendant SHORT, Plaintiff contacted Defendant SHORT by phone, informing her that Plaintiff was still

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

receiving a barrage of calls from the biological parents regarding a parental visit and asked when Defendant SHORT would set that up. In response, Defendant SHORT stated that, after receiving information from various coworkers and Defendant DAVIS regarding the negative behavior of the parents, Defendant SHORT did not feel comfortable monitoring the parental visits and Plaintiff would have to monitor them herself. When Plaintiff expressed her disbelief and disappointment at being expected to monitor parental visits when she had always been very clear from the beginning that she could not do so, Defendant SHORT said that it was required based on a court order at the request of Defendant DAVIS. Plaintiff requested written proof of such a court order, but Defendant SHORT ignored her, only stating that Plaintiff should feel comfortable acting as the monitor during parental visits – despite Defendant SHORT, Defendant DAVIS, and Mr. Jules refusal to do so – solely because the biological father was Plaintiff's brother. Defendant SHORT then stated that if the biological mother, Latricia, posed a threat during a visit, Plaintiff should simply "leave the scene" and "call the police, if need be." Plaintiff again requested written documentation as to the alleged court order requiring that Plaintiff monitor parental visits, but Defendant SHORT stated that, "per my supervisor, [Defendant DAVIS], I have been instructed not to give you any documentation because you are only [H.S.]'s care provider, and you are not privy to such documentation. [H.S.]'s

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

parents need to have a visit soon, and I expect you to update me on the date, time, location, and behavior of the parents before and after each visit."

71.    Plaintiff then followed up with H.S.'s attorney, Lela Getzler. Plaintiff left a message with reception for Ms. Getzler's office, which was unable to confirm if Defendant SHORT's representations were accurate. Plaintiff subsequently left multiple other messages with Ms. Getzler on this issue as well as the misconduct by DCFS employees at the Vermont Corridor office. Ms. Getzler did not return Plaintiff's calls until June of 2015, which was the first time Ms. Getzler inquired about H.S. since being placed with Plaintiff the previous November.

72.    Later in June of 2015, Defendant SHORT contacted Plaintiff to inform her that H.S. did not receive approved F-rate funding because Plaintiff had not taken the F-rate training class. This was the first instance where anyone from DCFS informed Plaintiff of the existence or necessity of an F-rate training class, only a CPR, BLS, and AED certification, which Plaintiff paid for out of her own pocket.

73.    Throughout 2015 through the present day, Defendant SHORT has consistently been 1-3 hours late to each home visit she has scheduled with Plaintiff, sometimes resulting in Defendant SHORT demanding that Plaintiff take H.S. to the DPSS office in Pamona to meet Defendant SHORT there due to her time constraints. This created further financial hardship on Plaintiff who would have to invest in additional gas to drive as well as disrupt her work schedule.

74.     During one such visit to the DPSS office in Pamona, Plaintiff met with social worker named Ruby Loranelle, who inquired as to Plaintiff's relationship with DCFS was going. Plaintiff answered honestly, expressing her frustration regarding Defendant OBAKHUME's sexual harassment, Mr. Jules' apparent decision to remove himself from the case by claiming fear for his safety, and the inaction of Defendants SHORT and DAVIS regarding F-rate funding and parental visits. Ms. Loranelle suggested Plaintiff complain to Defendant DAVIS' supervisor. When Plaintiff explained that she had been leaving messages with ARA Scanda Giles for months without any response, Ms. Loranelle explained that ARA Giles had been replaced by Laura Mejia and gave Plaintiff Ms. Mejia's direct office number.

75.     Plaintiff called Laura Mejia and left a message, which was returned a few days later. Plaintiff expressed her concerns about the numerous issued with Defendants working out of the Vermont Corridor office. Ms. Mejia verified that H.S. was approved as of January of 2015 for F-rate funding, and that once Plaintiff completed the required classes, Ms. Mejia would personally approve retroactive F-rate funding. Ms. Mejia told Plaintiff to follow up with her directly after completing the F-rate class in August. Plaintiff did so and left multiple messages, but Ms. Mejia never returned any of her calls, forcing Plaintiff to fund H.S.'s education by borrowing money from relatives.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

76.     In or around early August of 2015, Defendant SHORT called Plaintiff and demanded to know why Plaintiff requested for her to be replaced by Defendant OBAKHUME. Plaintiff expressed complete shock, assuring Defendant SHORT that she had no interest in interacting with Defendant OBAKHUME ever again, in light of the repeated sexual harassment she faced from him. Defendant SHORT confirmed that Defendant DAVIS had reassigned Defendant OBAKHUME as H.S.'s social worker, despite Plaintiff's numerous complaints regarding Defendant OBAKHUME's harassing and inappropriate behavior.

77.     In or around August of 2015, Defendant OBAKHUME – who was in fact reassigned to be the social worker despite the numerous complaints Plaintiff had made regarding his inappropriate and harassing behavior, either by Defendant DAVIS or other employees of Defendant COLA/DCFS – performed a home visit. During the visit, Plaintiff discussed the expectation that Plaintiff act as a monitor for parental visits. Defendant OBAKHUME stated pointedly that Defendant SHORT had lied to Plaintiff to avoid doing her job. Defendant OBAKHUME went on to assert that Ronald Sampson, the biological father, enjoyed *unmonitored* visitation, but that the Latricia Wright, the biological mother, required monitored visitation which was to be done either through DCFS or at her own expense. Defendant OBAKHUME advised Plaintiff not to monitor parental visits.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

78.    Over the course of 2015, Plaintiff took classes in a good faith effort to be certified and/or qualified to participate in all necessary programs and/or benefits available to her or H.S. through the Defendant COLA/DCFS. While attending these classes, Plaintiff met with social workers and other employees of Defendant COLA/DCFS who were not working out of the Vermont Corridor office. As Plaintiff discussed the problems she experienced with Defendants regarding H.S.'s case, Plaintiff was informed that there are numerous rules, regulations, policies, and procedures that were withheld from Plaintiff by Defendants or that Defendants directly misrepresented to Plaintiff. Additionally, Plaintiff learned that many of the caregiver options and rights that were available to her were denied or otherwise concealed from Plaintiff by Defendants.

79.    Plaintiff continued to experience serious financial strain as a result of the refusal of Defendants to provide Plaintiff with F-rate funding for H.S., despite prior approval and Plaintiff completing the F-rate class that was previously used as a justification to withhold said funding. When Plaintiff repeatedly communicated to Defendant OBAKHUME that she knew he had received the certificate of completion for Plaintiff's class, Defendant OBAKHUME continued to engage in inappropriate and coercive sexual harassment, which included but was not necessarily limited to blaming Defendant DAVIS for the hold-up in funding while continuing to

shamelessly suggest that Defendant OBAKHUME could resolve the funding issue if Plaintiff ended her marriage.

80.     At one point in or around August of 2015, Plaintiff received a call from an employee of Defendant COLA/DCFS from the revenue department, who identified herself as Renee Hood. Ms. Hood specifically told Plaintiff that she was concerned because she kept receiving information regarding H.S.'s case from Defendant OBAKHUME that was plainly contradicted by reality, and that all requests for documentation regarding H.S.'s funding made to the Vermont Corridor office had been completely ignored.

81.     In or around August of 2015, the Court granted Plaintiff legal guardianship of H.S. at the request of the biological parents and all counsel in the case.

82.     In or around Early September of 2015, Plaintiff was introduced to Melissa Testerman, an employee of Defendants COLA/DCFS who handled funding matters. Ms. Testerman informed Plaintiff that she personally emailed Defendant OBAKHUME with instructions and permission to approve three months of retroactive "F-rate and F2-rate" funding for H.S. However, Defendant OBAKHUME continued to insist to Plaintiff that he did not know who Ms. Testerman was, had never been contacted by her, and that only Defendant DAVIS had the authority to approve such funding. Given the intense financial strain that Defendants OBAKHUME, DAVIS, and others had placed on Plaintiff by withholding said

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

funding, Plaintiff begged and pleaded for Defendant OBAKHUME to contact Ms. Testerman directly. In response, Defendant OBAKHUME simply asserted to Plaintiff that following up with Ms. Testerman "is not my job."

83.    When Plaintiff relayed Defendant OBAKHUME's refusal to Ms. Testerman, she apologized for Defendant OBAKHUME's misconduct and forwarded prior emails to Defendant OBAKHUME to Plaintiff directly as proof of Defendant OBAKHUME's lies regarding the withholding of funding. When Plaintiff contacted Defendant OBAKHUME regarding the emails, Defendant OBAKHUME simply reiterated that only Defendant DAVIS could approve the funding, and until she did, Defendant OBAKHUME would not contact the revenue department.

84.    In or around September of 2015, Defendant OBAKHUME asserted that Plaintiff's signature was required on certain unspecified documents before the F-rate funding could be approved; this was despite the fact that said funding had already been approved and that Ms. Testerman had already informed Plaintiff that her signature was not required in order to resolve the funding issue. Defendant OBAKHUME represented to Plaintiff that he had mailed documents Plaintiff needed to sign in two (2) different packages, and that funding would be approved once Defendant OBAKHUME received both sets of documents back from Plaintiff with her signature. Defendant OBAKHUME never acknowledged that this explanation

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

completely contradicted his prior, repeated representations that funding was being withheld pending personal approval by Defendant DAVIS.

85.    On or about September 10, 2015, Defendant OBAKHUME sent text messages to Plaintiff, asserting that no retroactive F-rate pay would be provided for H.S., despite the explicit representations of members of the revenue department, claiming that the lack of retroactive payment was because Plaintiff failed to complete the F-rate class by a certain deadline, even though Plaintiff signed up for the class immediately upon being informed by Defendants that it was a requirement.

86.    In or around September of 2015, Plaintiff made contact with Defendant IBARRA, who apologized to Plaintiff for the treatment she received by Defendants at the Vermont Corridor office, and promised to resolve H.S.'s F-rate funding issue, remove Defendant OBAKHUME as the assigned social worker, and address the unprofessional conduct of defendants at the Vermont Corridor office.

87.    On or about September 18, 2015, Plaintiff attempted to follow up with Defendant OBAKHUME regarding funding for H.S., while she was on a brief visit to Nevada to see her children and other family members. Defendant OBAKHUME, via text message, expressed outrage that Plaintiff was in Nevada with her family, and asserted that by doing so Plaintiff was jeopardizing her guardianship with H.S., and threatened that he would contact minor's counsel Lela Getzler to discuss terminating Plaintiff's relationship. Plaintiff understood Defendant OBAKHUME's reaction to be

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

part of Defendant OBAKHUME's implied and explicit expectations that Plaintiff remain in California, become single, and be romantically and/or sexually available to Defendant OBAKHUME.

88.     On or about September 25, 2015, and after repeatedly being told by Renee Hood from revenue that Defendant OBAKHUME was not providing documentation that would give approval to H.S.'s F-rate funding, Plaintiff informed Defendant OBAKHUME that she was on her way to the Vermont Corridor office to speak to him and Defendant DAVIS about the issue.

89.     While on route to the Vermont Corridor office, Plaintiff received a call from Defendant DAVIS, demanding to know the purpose of Plaintiff's visit. Plaintiff reiterated the long-running issue with H.S.'s funding. Defendant DAVIS claimed she knew nothing about it (despite the repeated representations by Defendant OBAKHUME that Defendant DAVIS was personally in charge of funding approval) asserted that Plaintiff should never visit Defendant OBAKHUME in his office, and that because she was "a very busy woman, and I have things to do," Defendant DAVIS would not be available to speak with her that day if Plaintiff did not arrive before 1:30 p.m., which Plaintiff could not given the traffic and time of day.

90.     On or about September 28, 2015, Plaintiff informed Defendant OBAKHUME of the loss of her grandfather, and requested that Defendant OBAKHUME assist her in rescheduling the upcoming visit in light of the family emergency, either holding

the visit after 5:00 p.m. or on one of several alternate dates that Plaintiff suggested. Defendant OBAKHUME responded that Plaintiff would have to drive out to Los Angeles for the visit because Defendant OBAKHUME would not travel to her, and suggested that Defendant COLA/DCFS should reconsider what was in the best interests of H.S. due to how difficult it was to work with Plaintiff.

91.    As a result of Defendant OBAKHUME's wildly unprofessional behavior in accusing Plaintiff of being an unfit guardian because she dared to request that the visit be rescheduled in light of the passing of her grandfather, Plaintiff contacted Defendant DAVIS and requested that another social worker be assigned to the case and that the funding issue and other matters be addressed. Plaintiff also informed Defendant DAVIS that if Defendant OBAKHUME came out for the next visit, she would continue to follow up with Defendant IBARRA and others until another social worker was assigned. Defendant DAVIS only responded that a different social worker would be coming out for the visit scheduled on or about September 30, 2015.

92.    On September 30, 2015, Plaintiff received a call from Defendant DAVIS, explaining that a social worker named Barbara Barabino would be conducting the visit at 6:00 p.m. that evening. At approximately 6:45 p.m., Plaintiff received a call from Ms. Barabino explaining that she was still stuck in Los Angeles traffic, and asked that Plaintiff wait for her, to which Plaintiff agreed. At approximately 7:45 p.m., Ms. Barabino called saying that she was nowhere near Plaintiff's home. Plaintiff

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

stated that H.S. had a bedtime of 8:30 p.m. and offered to meet Ms. Barabino halfway in order to speed things along. Ms. Barabino agreed and the two met at an Arco gas station in Pomona, California at approximately 9:45 p.m.

93.    During the visit, Ms. Barabino asked if Plaintiff knew why she had been asked to conduct the visit. Plaintiff informed Ms. Barabino of the issues with Defendant OBAKHUME and Defendant DAVIS, as well as the hold-up on H.S.'s funding, as well as the text messages Defendant OBAKHUME had sent threatening to have her guardianship with H.S. terminated. Ms. Barabino stated that she was appalled at the misconduct of Defendants OBAKHUME and DAVIS, and that she would speak with Defendant DAVIS as a final attempt to have her resolve the issues in the Vermont Corridor office before reaching out to Regional Administrator Reginald Carter personally.

94.    On or about October 2, 2015, Ms. Barabino sent a text to Plaintiff, informing her that Ms. Barabino had spoken to Defendant DAVIS, and that Defendant DAVIS would be calling Plaintiff. After a week without hearing from Defendant DAVIS, Plaintiff reached out to Ms. Barabino, who assured Plaintiff that Defendant DAVIS would get back to Plaintiff.

95.    Plaintiff continued to follow up with employees of Defendant COLA/DCFS, including sending an email to Regional Administrator Reginald Carter, regarding lack

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

of response regarding the ongoing funding issues, but no one responded and Defendant OBAKHUME remained the assigned social worker for H.S.

96.    Plaintiff arranged a visit for biological father Ronald Sampson on the date of their grandfather's funeral, October 16, 2015.

97.    On October 17, 2015, during a visit by the biological father at a family gathering located at the residence of Betty Glenn, Plaintiff was informed that no one knew where the biological father or H.S. had gone.

98.    Plaintiff attempted to reach Ronald Sampson by phone, but he did not answer and Plaintiff could not leave a voicemail message. Plaintiff tried calling Ronald Sampson several more times, and then contacted the police. However, Plaintiff was informed by a desk sergeant that it was not a kidnapping because the birth parents were involved and it was during an unmonitored visit. The police officer encouraged Plaintiff to calm down, go home, and report her concerns to the assigned social worker. However, when Plaintiff attempted to reach Defendant OBAKHUME, his phone appeared to be off and his voicemail box was full the entire weekend.

99.    On or about October 18, 2015, Plaintiff received a call from Ronald Sampson, stating that he needed help because H.S.'s biological mother, Latricia Wright, was fighting him in front of the children, and he believed that she was under the influence of illegal narcotics which she had apparently purchased with grocery money. Plaintiff

COMPLAINT FOR DAMAGES

asked where he was, but Ronald Sampson only stated that he was waiting on a ride from another family member, and would not give his or H.S.'s location to Plaintiff.

100.   Plaintiff then received a call from Ms. Glenn, confirming that they were on route to remove H.S. and Ronald Sampson and would call as soon as they made contact. Shortly thereafter, Plaintiff received another call from Ms. Glenn, confirming that H.S. and her brother were, unclothed and hungry, but safe. Ms. Glenn also represented that biological mother Latricia Wright had refused to release the new clothes, shoes, toys, backpack, or medicine that Plaintiff had provided for H.S. during the unmonitored visit. Plaintiff met with Ms. Glenn and others, picking up H.S. Plaintiff left a message on Defendant OBAKHUME's work phone, advising him of the situation and the need to discuss what happened in preparation for the next court hearing in H.S.'s case.

101.   On or about October 19, 2015, Plaintiff, who had not received a call back from Defendant OBAKHUME, sent a text message to Defendant OBAKHUME, stating that there was an emergency and to please have Defendant DAVIS call her. Defendant OBAKHUME simply responded "She's off every Monday." Plaintiff then requested Defendant DAVIS' cellphone number, informing Defendant OBAKHUME that there was an incident involving the biological parents, all visitation should be suspended, and requested to speak to him directly to document the incident. Defendant OBAKHUME responded that he could not disclose Defendant DAVIS'

cellphone number and encouraged Plaintiff to contact minor's counsel, Lela Getzler. Importantly, Defendant OBAKHUME did not inquire as to the incident and did not ever attempt to discuss the incident with Plaintiff, despite being the assigned social worker.

102.    On or about October 27, 2015, over a week later, Defendant OBAKHUME sent a text message to Plaintiff, requesting details of the incident that occurred with the biological parents. A visit was arranged with Defendant OBAKHUME, to take place at Plaintiff's residence on October 29, 2015 at 3:00 p.m., though Defendant OBAKHUME did not arrive until approximately 5:00 p.m.. During the two hour wait, Plaintiff contacted Defendant DAVIS to inquire as to what was going. Defendant DAVIS pointedly told Plaintiff that it was not the fault of Defendant DAVIS or Defendant OBAKHUME that Plaintiff lived far away, and that Plaintiff had better be there whenever Defendant OBAKHUME arrived.

103.    When Defendant OBAKHUME did arrive, he did so with an unidentified female accompanying him. Plaintiff asked her for her identification, assuming she was an employee of Defendants COLA/DCFS. However, the woman simply stated, "Oh, I'm just here with Ahmed while he visits the child." Based on this, as well as Defendant OBAKHUME's refusal to acknowledge the purpose of an unidentified female companion, Plaintiff reasonably inferred that Defendant OBAKHUME chose to bring a personal acquaintance with him on a home visit, which is both

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

unprofessional and in violation of the rules, regulations, policies, and/or procedures of Defendants COLA/DCFS.

104.    During the visit, Defendant OBAKHUME repeatedly asked questions that were answered in Plaintiff's prior messages to him, including voicemail messages to his office number, suggesting that Defendant OBAKHUME did not review any of the messages prior to meeting with Plaintiff. Plaintiff communicated to Defendant OBAKHUME that she would stay in touch with minor's counsel, Lela Getzler.

105.    Defendant OBAKHUME, in the presence of the unidentified female companion, pointedly told Plaintiff that she should return H.S. to Defendant DCFS if Plaintiff couldn't handle the negative side of caring for the child. When Plaintiff expressed shock and frustration that Defendant OBAKHUME would so casually suggest that Plaintiff should give up H.S. after being her sole caregiver and legal guardian, Defendant OBAKHUME replied, "Look, Ms. Sampson. I am not going to argue with you; call the hotline when you decided that [H.S.]'s baggage is too much to deal with." Defendant OBAKHUME then texted Plaintiff the general child protection hotline, which Plaintiff reasonably interpreted to be a threat regarding the continuing custody and guardianship of H.S.

106.    During the visit, Plaintiff showed Defendant OBAKHUME what remained of H.S.'s clothing and explained that the biological mother had kept the new clothes, jacket, backpack, and medication. Plaintiff inquired as to whether a clothing

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

allowance could be provided in light of the loss of new clothes for H.S., some of which were presents bought by family members to help Plaintiff financially. Defendant OBAKHUME refused, saying that any such allowance could only be approved by Defendant DAVIS personally.

107.    Towards the end of the visit, Plaintiff told Defendant OBAKHUME that she had recognized his entire attitude and behavior towards her had changed, and that Plaintiff believed the change – which included Defendant OBAKHUME's repeated lies and refusal to process or otherwise resolve funding issues for H.S. – were because Plaintiff declined Defendant OBAKHUME's repeated suggestions to divorce her husband or otherwise reciprocate Defendant OBAKHUME's inappropriate advances. Defendant OBAKHUME responded by stating "I don't know where you get off sending all these complaint emails and making all these calls, but you are going to find out that we at the Vermont Corridor stick together, and cover for each other. No one is going to lose their job behind you and your mess, Ms. Sampson." Plaintiff then informed Defendant OBAKHUME that she would continue to report any misconduct by him, and asked that Defendant OBAKHUME leave.

108.    Plaintiff immediately contacted Defendant IBARRA, leaving messages urging him to call her back. Later that day, Defendant IBARRA called back and expressed surprise that Defendant DAVIS had not followed up regarding the incident with the biological parents, because Defendant Davis had personally assured Defendant

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

IBARRA that she would do so. Defendant IBARRA admitted that he had avoided intervening because he wanted to give Defendant DAVIS the opportunity to resolve all matters, but would do so now. Defendant IBARRA requested that Plaintiff give him until the end of the week to follow up.

109.    Later that evening, Plaintiff received a phone call from minor's counsel Lela Getzler, requesting information on the parental incident. Plaintiff told Ms. Getzler that she did not believe the biological father, Ronald Sampson, should continue to enjoy unmonitored visits with H.S. in light of his inability to comply with court orders. During the conversation, Plaintiff acknowledged what she had been previously told by Defendants SHORT, OBAKHUME, and DAVIS – i.e. that Plaintiff had been put in charge of arranging parental visits, that a court order released Defendant DCFS from being responsible for monitoring parental visits due to the alleged safety concerns of Defendants SHORT and DAVIS, and that any deviation by Plaintiff from Defendant SHORT's instructions would be a violation of the court order. Plaintiff also asserted that she was not afraid of her own safety around the biological parents, but that she should not be responsible for arranging their visits instead of DCFS.

110.    Ms. Getzler responded that she did not believe the information provided to Plaintiff was accurate, and that she believed the Court still required DCFS, by and through the Defendants at the Vermont Corridor office, to arrange and monitor

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

parental visits. Ms. Getzler went on to explain that the DCFS case should have been closed in August of 2015, but was delayed because Defendants had not followed through on the requirements of the Court and that Ms. Getzler did not want to close the case until H.S.'s F-rating was resolved.

111.   Over the next two weeks, Plaintiff did not receive any response from Defendant IBARRA, despite leaving additional messages requesting the same.

112.   On or about November 10, 2015, at approximately 11:41 a.m., Plaintiff sent a text message to Defendant OBAKHUME, requesting an update regarding whether Defendant DAVIS would approve a clothing allowance in light of the taking of H.S.'s biological mother stealing her new clothes. Defendant OBAKHUME never replied.

113.   During the evening of November 10, 2015, LaLisa Morgan, an investigator employed by Defendants COLA/DCFS, arrived at Plaintiff's residence and asserted that she was there to conduct an investigation against Plaintiff for charges of abuse and neglect with respect to H.S. Ms. Morgan stated that she would simply do a home inspection at that time, but would return on November 12, 2015 at 8:00 p.m. to proceed with the investigation.

114.   On November 12, 2015 at approximately 8:45 p.m. Investigator Morgan arrived and interviewed Plaintiff, H.S., Plaintiff's current and former spouse, Plaintiff's friend Zakkiyyah King, and Betty Glenn, as well as reviewed

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

documentation relating to H.S.'s case, and emails and text communications between Plaintiff and several employees of Defendant COLA/DCFS.

115.    Throughout the investigation, Plaintiff complied fully, providing documentation and making herself and others available for phone visits and interviews. This included interviews of Plaintiff's mother, Veda Scott, as well as H.S.'s educator and owner of Tiny Feet Daycare and Preschool, Antoinette Crawford.

116.    On or about November 13, 2015, Plaintiff received a text message from Defendant OBAKHUME that stated he was in the process of figuring out whether a clothing allowance would be possible. That same day, Plaintiff received a message from Defendant IBARRA stating that he was "following up regarding our last conversation." These messages were left by individuals that had not bothered to follow up at any point previously, but were suddenly acting as though they were going to help Plaintiff immediately after Defendant COLA/DCFS opened an investigation into Plaintiff for alleged child abuse and neglect. As a result, Plaintiff reasonably suspected that her complaints to both individuals and the timing of the investigation were likely related.

117.    In or around November of 2015, Plaintiff contacted Ms. Barabino and asked if she would be willing to speak with Investigator Morgan about the September visit at the gas station and Plaintiff's prior complaints. Ms. Barabino agreed to do so.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

118.   The following day, at Ms. Barabino's request, Plaintiff contacted her again by phone. During this conversation, Ms. Barabino confirmed that Defendant OBAKHUME, with written permission from Defendant DAVIS, filed the allegations of child abuse and neglect against Plaintiff. Ms. Barabino communicated to Plaintiff that it was likely that the Defendants had opened an investigation into her in order to buy time to revise H.S.'s file in order to avoid any appearance of misconduct. Ms. Barabino went on to suggest that Defendants, including Defendant DAVIS in particular, may back-date documents and engage in "stuffing" of H.S.'s file in order to avoid culpability. Ms. Barabino ended the call by encouraging Plaintiff to have Investigator Morgan call her.

119.   On or about November 14, 2015, Plaintiff emailed Defendant YOKOYAMA, stating explicitly that her email was an attempt to notify Defendant YOKOYAMA of a serious and critical issue with respect to Defendants in the Vermont Corridor office. The email detailed the inappropriate sexual harassment by Defendant OBAKHUME and his repeated suggestions that the process would be much easier for Plaintiff if she divorced her husband, as well as the numerous misrepresentations, failures, and inappropriate conduct of Defendants in general over the last several months. Plaintiff referenced in her email the specific comments by Defendant OBAKHUME during the prior home visit on or about October 30, 3015, wherein he stated that Plaintiff would find out how Defendants in the Vermont Corridor office stick together and cover for

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

each other. Plaintiff concluded her email with the request that Defendant YOKOYAMA have the case transferred away from Defendants OBAKHUME, SHORT, and DAVIS and cease all contact from them.

120.    On or about November 15, 2015, Plaintiff received a short response from Defendant YOKOYAMA, stating that she had requested that Defendant IBARRA look into the matter and get in touch with Plaintiff.

121.    On or about November 16, 2015, Plaintiff received a voicemail message from Defendant SHORT, who was no longer the assigned social worker. The message stated, without explanation, that there was "a warrant out."

122.    While the investigation into Defendant OBAKHUME and DAVIS' false allegations of child abuse and neglect were being investigated, Plaintiff began receiving calls from Defendants, requesting that Plaintiff call Defendant DAVIS without stating why.

123.    On or about December 11, 2015, H.S. was detained by Defendant DCFS, in the presence of the Rialto Police Department, which was pursuant to a removal warrant issued by a judge that was based on the information provided by employees of Defendant DCFS, including but not necessarily limited to Defendants OBAKHUME and DAVIS.

124.    On or about December 12, 2015, Plaintiff spoke with Irene Ball, who stated the following:

i. That approximately two months prior to the detention of H.S. by
Defendants, Ms. Ball was told by Defendants to expect H.S. to return to
her care; meaning that DCFS employees had decided to remove H.S.
prior to the opening of an investigation or even the reporting of alleged
child abuse by Defendants OBAKHUME and DAVIS;

ii. That Ms. Ball was at her limit for foster children she could take in to her
home, but that Defendant SHORT had previously assured Ms. Ball that,
per Defendant DAVIS, a permit would be given to her allowing for H.S.
to stay despite exceeding the limit allowed under state and local law;

iii. That Ms. Ball felt she was in the middle of a game that Defendants were
playing because no information regarding the basis for removal was
ever provided to Ms. Ball; only vague answers that made no sense;

iv. That Defendant SHORT instructed Ms. Ball not to allow any contact
whatsoever between H.S. and Plaintiff, or Plaintiff's mother, and in
doing so made comments to Ms. Ball stating, "like brother, like sister"
which Ms. Ball criticized as false;

v. That Defendant SHORT specifically told Ms. Ball that H.S.'s case was
very sensitive and if Ms. Ball did not follow Defendants instructions,
she was risking her income as a care provider;

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

vi.   That Ms. Ball was instructed by Defendant SHORT to not monitor visits or arrange them herself, as she normally had done, but to leave all visits with H.S. to Defendants to arrange personally;

vii.   That Ms. Ball believed the foster agency was threatening her license and income at the instructions of Defendants working out of the Vermont Corridor; and

viii.   That H.S. was constantly asking Ms. Ball to let her go home, and that she wanted to allow Plaintiff to have phone calls regularly for the sake of the child.

125.   On or about December 15, 2015, Plaintiff spoke with Defendant SHORT regarding visitation with H.S. Defendant SHORT stated that weekend visits would be approved in special circumstances. In response, Plaintiff acknowledged that because she worked 9:00 a.m. to 6:00 p.m. on weekdays, she would appreciate weekend visitation when possible. In response, Defendant SHORT immediately stated, "But in your case, there will be no weekends" because Defendant DAVIS would not approve overtime for social workers. Defendant SHORT went on to tell Plaintiff that if Plaintiff really wanted to see H.S., Plaintiff would figure out how to get off of work.

126.   At that point, Plaintiff asked Defendant SHORT if she could record their conversation. Defendant SHORT responded by yelling "NO! I know what you're up to, Ms. Sampson." When Plaintiff asked what Defendant SHORT meant, Defendant

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

SHORT ignored the question and told Plaintiff to let her know when she could visit H.S. on a weekday between 8:00 a.m. and 5:00 p.m.

127.    Plaintiff left a message with Defendant SHORT the following day to schedule a visit with H.S., which was not returned.

128.    Plaintiff left another message on December 18, 2015, asking to schedule a visit with H.S., which was also not returned.

129.    On or about December 23, 2015, Plaintiff reached Defendant SHORT by phone, and was told that Plaintiff would not be able to see H.S. until sometime in January, because Defendant SHORT was preparing to go on vacation. When Plaintiff asked if everyone from the Vermont Corridor office would be on vacation, Defendant SHORT admitted they were not, but asserted that she would not stop what she was doing to locate a monitor for Plaintiff's visit.

130.    Plaintiff ultimately was able to schedule a visit for Noon on December 29, 2015. Plaintiff arrived at the Vermont Corridor at 11:50 a.m., and brought her mother, Veda Scott, out of fear of being alone with Defendants in light of the continuous misconduct, false statements, and threats that had occurred in her case. Based on a previous phone conversation with Defendant SHORT, Plaintiff understood that the monitor would be a woman named Tamika Jackson.

131.    Shortly after, Ms. Ball arrived with H.S. for the visit, but was told that a Ms. Johnson, not Jackson, was the social worker that would monitor the visit. A clerk at

the Vermont Corridor office claimed he did not know of anyone by the name Jackson or Johnson. DCFS social worker Ruby Loranelle came down to resolve the confusion, and met with Plaintiff. Ms. Loranelle communicated to Plaintiff at that time that she was shocked at Defendants' accusations of child abuse and neglect, but expressed a lack of surprise as to the misconduct of Defendant OBAKHUME.

132.   In or around January of 2016, Plaintiff was informed that an appellate court had ordered Defendant COLA/DCFS to return H.S. to Plaintiff's care.

133.   Defendants ultimately returned H.S. to Plaintiff's care, with Defendant SHORT remaining as the assigned social worker.

134.   On or about April 22, 2016, the juvenile dependency court made orders that included the following:

    1. That the Section 387 Petition by Defendants against Plaintiff on December 9, 2015, resulting in the removal of H.S. from Plaintiff's custody, be dismissed;

    2. That Plaintiff shall not allow any contact to occur between H.S. and the biological parents, and all contacts between the biological parents and H.S. are to be through Defendant DCFS and supervised by a DCFS-approved person; and

    3. That Plaintiff shall not monitor any visits between H.S. and the biological parents.

135.   On or about May 20, 2016, a home visit was conducted by Defendant SHORT in the presence of Plaintiff and her mother, Veda Scott. During the visit, Defendant SHORT and Plaintiff discussed scheduling a parental visit. Defendant SHORT requested that Plaintiff "meet her half-way" and assist in conducting a parental visit. Defendant SHORT went on to explain that for her to arrange and monitor the visit alone would be "traumatizing" to H.S. because H.S. didn't know Defendant SHORT. Plaintiff's mother stated to Defendant SHORT that such a plan would violate multiple parts of the Court's order from April 22, 2016. Plaintiff thereafter declined Defendant SHORT's request, acknowledging that the Court explicitly ordered Defendants to arrange the parental visits.

136.   Plaintiff, who has always resided in San Bernardino County, sought transfer of H.S.'s case to San Bernardino County. Defendant SHORT has repeatedly communicated to Plaintiff that such a transfer cannot occur until Plaintiff agrees to attend psychotherapy sessions with a Los Angeles based psychologist of Defendant SHORT's choosing, which Plaintiff is not comfortable doing, because (1) it did not make sense for Plaintiff to begin any service or treatment if the case is about to be transferred to another jurisdiction, forcing her to engage in services in Los Angeles County instead of San Bernardino County, and (2) Plaintiff was reasonably suspicious of any demands or requirements that Defendant SHORT, Defendant DAVIS, or any other member of the Vermont Corridor staff place on Plaintiff in light of the

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

misinformation that has been nearly constant in every communication with Defendants.

137.    On or about May 23, 2016, counsel for Defendant COLA filed a motion to transfer H.S.'s case to San Bernardino County. The hearing on the motion to transfer was set for June 10, 2016.

138.    On or about May 24, 2016, counsel for Defendant COLA sent an email to Plaintiff's counsel, and cc'ed Defendants DAVIS and SHORT, complaining that Defendant SHORT felt threatened by the "aggressive" and "demeaning" behavior of Plaintiff's mother, Veda Scott, who is in fact a veteran employee of Defendant COLA, by and through the Social Services Department. Counsel for Defendant COLA went on to state that Defendant SHORT's "discomfort" was so great that she will demand law enforcement to be present for any and all future home visits, and suggested – without explanation – that Plaintiff wouldn't like law enforcement to be at her home.

139.    Plaintiff understands that this email, sent at the behest of Defendants, is in fact another example of Defendants – including the individual defendants working out of the Vermont Corridor office in particular – to assert a baseless "fear" of harm as a justification to avoid doing their jobs in a professional and appropriate manner, as was repeatedly used by Defendants SHORT, DAVIS, and others to demand that Plaintiff herself monitor parental visits in this case.

COMPLAINT FOR DAMAGES

140.   On or about June 10, 2016, the juvenile dependency case was transferred to San Bernardino County.

141.   On or about February 23, 2017, the juvenile dependency case was officially closed by the San Bernardino Juvenile Dependency Court, and Plaintiff remains the sole legal guardian for minor H.S.

142.   As a result of the conduct of Defendants, including Defendants OBAKHUME, DAVIS, SHORT, and others, Plaintiff has been driven to desperate financial circumstances, where she has had to borrow money from family members in order to survive and provide for H.S. and her other children. This is a direct and proximate result of the actions of Defendants, who consistently delayed, avoided, or otherwise withheld funding for H.S., as well as information on the procedures for obtaining the same, despite the fact that Defendants had the necessary information and documents – including medical documentation provided directly to Defendants by H.S.'s medical care providers – that warranted disbursement of funding pursuant to state law and the internal policies and procedures of Defendant COLA by and through DCFS.

143.   As a result of the conduct of Defendants, Plaintiff has suffered severe, pervasive, and ongoing emotional distress and psychological harm, which Defendants inflicted on Plaintiff intentionally and with reckless disregard for the same.

144.   The actions of Defendants, and each of them, were reckless, willful, malicious, and with a conscious disregard for the civil rights of Plaintiff as well as the well-

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

being and best interests of H.S. Such wrongful conduct necessarily entitles Plaintiff to seek punitive damages from individual Defendants' wrongful acts for the purpose of punishing said Defendants, to make an example out of them, and to discourage such misconduct in the future.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – 1st Amendment – Interference with Familial Relations
### Against Defendants OBAKHUME, DAVIS, SHORT, and Doe Defendants 1-50

145.   Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

146.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment I and XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right of familial association under the First Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

147.   Plaintiffs are informed and believe and thereon allege that the right to familial association guaranteed under the Fourteenth Amendment is "clearly established" such that a reasonable social worker and/or police officer in defendants' situation would

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

know it is unlawful to remove a child from the care, custody and control of its parents or other biological relative serving as a legal guardian absent legal justification; this "clearly established" right includes the right to not have a warrant for removal issued unless such a warrant is based on true and correct information rather than on misrepresentations.

148.    The violation of Plaintiff's right to familial association – specifically with respect to H.S. – includes the period from H.S.'s removal on or about December 11, 2015 through until Defendants returned H.S. to Plaintiff's custody in January of 2016.

149.    Defendants, and each of them, took these actions while acting under color of law without reasonable probable cause and with deliberate indifference to Plaintiff's constitutional rights.

150.    Defendants did not at any time reasonably consider, implement, or attempt, any aspect of the "reasonable efforts" required by California law, requirements under federal law and/or regulations regarding social work in the area of child protection after removal from Plaintiff, who was her legal guardian. This conduct was and is the result of the deliberate indifference to the rights and safety of parents and children evidenced by the failure to adequately train, supervise, or discipline employees such as the employee defendants herein of Defendant COLA and DCFS.

151.    Commencing on or about October 30, 2015, and continuing through the present, Defendants, and each of them, were acting under color of state law when they

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

acted, agreed, and/or conspired to unlawfully remove, detain, question, threaten, examine, investigate and/or search Plaintiffs. Defendants did so without proper justification or authority and without probable cause, exigency, or court order. (See Mabe v. County of San Bernardino (2001) 237 F.3d 1101.)  Further, Defendants' actions were taken with deliberate indifference to Plaintiffs' rights.  Defendants and each of them, maliciously conspired to violate the civil rights of the Plaintiff, including violation of Plaintiff's rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining and continuing to detain Minor H.S. from the care, custody and control of the Plaintiff without proper or just cause and/or authority; maliciously denying Plaintiff her right to a hearing on said detention within 48 hours of removal; by the use of coercion and duress to obtain evidence, by maliciously continuing to ignore the order of the juvenile dependency court to transfer the juvenile dependency matter to San Bernardino County and by maliciously ignoring repeated court orders to allow Plaintiff to have unmonitored visits with the H.S.; and as to the individual Defendants by maliciously refusing to provide exculpatory evidence, and presenting fabricated evidence in furtherance of obtaining a removal warrant as well as providing the same to the juvenile dependency court, and maliciously refusing to provide exculpatory evidence during the pendency of the dependency proceedings in violation of Government Code §820.21, and violating Constitutional rights of Plaintiff.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

152.   By these actions Defendants, and each of them, interfered and/or attempted to interfere with Plaintiffs' constitutional right to familial association under the Fourteenth Amendment, as well as those rights applicable to California Law rising to the level of constitutionally protected rights.

153.   As a direct and proximate result of County Employee Defendants actions, Plaintiffs have suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

154.   In doing the things alleged herein, the individual Defendants, and each of them, violated Plaintiff's fundamental constitutional rights to due process of law and right to familial association under, inter alia, the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

155.   The acts and omissions of County Defendants, and each of them, were done by County Defendants under color of state law in their capacity as a municipality charted under state law, and as policy making authorities to which the Child Protective Services Agencies delegated their governing powers in the subject matter in which these polices were promulgated or decisions taken or customs and practices followed.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

156.   In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least, with a conscious, reckless and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from violation of said rights.

157.   The above-alleged conduct of County Defendants were consistent with the unconstitutional policies, customs and practices set forth by the DCFS, and was ratified by said Defendant COLA.

158.   As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff suffered general and special damages including but not limited to the loss of liberty, loss of familial association, as well as, physical, mental and emotional pain, shock, and suffering, in an amount according to proof at trial and consistent with 42 U.S.C. § 1983.

159.   In addition, the individual Defendants who worked for Defendant COLA who are government officials, deliberately engaged in corruption, retaliation and violations of Plaintiff's clearly established constitutional rights.  As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity.

//

//

//

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 – 1st Amendment – Retaliation**

**Against Defendants OBAKHUME, DAVIS, SHORT, Doe Defendants 1-50**

160.   Plaintiffs re-allege, adopt and incorporate the preceding paragraphs as if fully set forth herein.

161.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment I and XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right of free speech and the right to petition the government for redress under the First Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution. This right to petition includes but is not limited to Plaintiff's right to petition Defendant COLA and DCFS for administrative redress and complaints of misconduct without being subject to retaliation by Defendants as a result of such exercise of her rights.

162.   As described in more detail elsewhere in this Complaint, Defendants violated Plaintiff's rights by retaliating against Plaintiff when she complained, criticized, or otherwise communicated to Defendants OBAKHUME, SHORT, DAVIS, IBARRA, YOKOYAMA, and others employed by Defendant COLA, of the wrongful conduct of individual defendants. This includes but was not necessarily limited to complaints

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

regarding Defendant OBAKHUME's persistent sexual harassment, complaints regarding the failure of Defendants OBAKHUME, SHORT, and/or DAVIS to appropriately process paperwork related to funding or otherwise perform the duties of their employment with Defendant COLA in compliance with the laws of the State of California, federal law, or the internal regulations, policies, and procedures of DCFS itself.

163.   Defendants' retaliation, as described above, included but was not necessarily limited to the following examples of misconduct that occurred in response to Plaintiff's decision to exercise her legal right to communicate complaints to various employees of Defendant COLA:

  a.  withholding of reimbursement funds for clothing and care of minor H.S., despite approval to provide the same;

  b.  refusal to communicate the requirements and procedures for reimbursement funds under the law despite Plaintiff's specific requests for the same;

  c.  consistently attending home visits 2-3 hours late so as to disrupt Plaintiff's schedule and in an effort to create the impression that Plaintiff was not making herself available or otherwise complying with home visit requirements;

  d.  demanding that Plaintiff arrange and supervise parental visits despite such tasks being the responsibility of Defendants under state law, the internal

COMPLAINT FOR DAMAGES

policies and procedures of DCFS, and pursuant to orders by the juvenile

dependency court;

e.   making false allegations that Defendants – including Defendants

OBAKHUME, SHORT, and DAVIS in particular – were in fear for their

safety so as to avoid performing their job duties;

f.   making false allegations that Plaintiff engaged in abuse, neglect, or

otherwise mistreated or failed to care for H.S. in any way;

g.   refusing to schedule visits on weekends or otherwise accommodate

Plaintiff's schedule, so as to create the false implication that Plaintiff was

not reasonably cooperating with Defendants; and

h.   making false allegations Defendants – including Defendant SHORT in

particular – were in fear for their safety around Plaintiff or Plaintiff's

mother, Veda Scott.

164.   Defendants' conduct, as set forth above, was the direct and proximate cause of

severe and ongoing injury to Plaintiff, as stated elsewhere in this complaint.

165.   In addition, the individual Defendants who worked for Defendant COLA who

are government officials, deliberately engaged in corruption, retaliation and

violations of Plaintiffs clearly established constitutional rights.  As such, and by the

nature of their conduct, the individual defendants are not entitled to qualified

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

immunity.  Punitive damages are sought against the individual defendants employed by Defendant COLA according to proof.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 – 14th Amendment - Discrimination**

**Against Defendant OBAKHUME**

166.   Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

167.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under Amendment XIV to the United States Constitution to equal protection of the laws as well as the right to be free from discrimination based on her gender were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution. This right includes in particular the right to be free from sexual harassment by a government employee acting color of state law while in the course and scope of their official duties.

168.   As described in more detail, above, Defendant OBAKHUME engaged in a pattern of sexual harassment that continued through the fall of 2015 until – as alleged elsewhere in this Complaint – Defendants falsely alleged in a warrant application that Plaintiff was engaging in some sort of abuse or neglect with respect to minor H.S.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

169.   Defendant OBAKHUME's repeated sexual harassment of Plaintiff was severe and pervasive, and was done with the express intent of manipulating Plaintiff by withholding or otherwise delaying guardianship, funding, and services offered by Defendant COLA unless and until Plaintiff relented to his sexual advances.

170.   Defendant OBAKHUME's actions were willful, malicious, and purposefully calculated to deny Plaintiff her right to be free from such sexual harassment. No reasonable person in Defendant OBAKHUME's position could presume that Plaintiff was a willing participant in such harassment, as Plaintiff repeatedly asked Defendant OBAKHUME to cease such conduct, and eventually complained repeatedly to his supervisor, as well as other administrative officials regarding the misconduct and denial of funding in a good faith effort to cease such misconduct.

171.   Defendant OBAKHUME's conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiff, as stated elsewhere in this complaint.

172.   By the nature of Defendant OBAKHUME's conduct, he is not entitled to qualified immunity.  Punitive damages are sought against Defendant OBAKHUME according to proof.

//

//

//

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

# FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – 14th Amendment

## Violation of Procedural and Substantive Due Process

### Against Defendants OBAKHUME, SHORT, DAVIS, and Doe Defendants 1-50

173.    Plaintiff re-alleges, adopts, and incorporates the preceding paragraphs as if fully set forth herein.

174.    Defendants violated Plaintiff's 14th Amendment right to procedural and substantive due process by preventing Plaintiff from receiving a fundamentally fair, orderly, and just judicial proceeding, as described in this Complaint. In doing so, Defendants acted under color of law without reasonable probable cause. Defendants were deliberately indifferent to, or in the alternative were in fact motivated by a willful and malicious disregard of Plaintiff's rights.

175.    Defendants OBAKHUME, SHORT, and DAVIS, as well as unknown Doe Defendants, continually, repeatedly, and unfairly refused to conduct a competent, fair, and objective investigation and evaluation of Plaintiff's fitness to maintain custody of H.S. Each Defendant was responsible for evaluating the information available to them in good faith, and giving each piece of evidence proper weight in considering Plaintiff's ability to care for H.S.

176.    In multiple instances as described herein, Defendants refused to communicate with or cooperate with Plaintiff, often to the point of berating Plaintiff or directly misleading Plaintiff in an effort to avoid responsibility for their own misconduct.

177.    Both Defendants made false representations to the Court that were knowing, intentional, and in reckless disregard of the truth and Plaintiff's civil rights.

178.    As a result of these Defendants' actions, Plaintiff was never given a fair opportunity to retain and maintain custody of H.S. The actions of Defendants deprived Plaintiff of her due process rights under the 5th and 14th Amendments and in violation of her First Amendment Right to familial association.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

179.   As a result of Defendants' misconduct, Plaintiff suffered severe emotional pain and suffering, as well as economic harm in the form of denied funding that was withheld as a result of Defendants' actions.

## FIFTH CAUSE OF ACTION

### Violation of 42 U.S.C. § 1983 – 4th Amendment – Wrongful Taking of Minor Child Against Defendants OBAKHUME, SHORT, DAVIS, and Doe Defendants 1-50

180.   Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

181.   At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment IV and XIV to the United States Constitution to due process of law and the equal protection of the laws as well as the right to be free from unlawful searches and seizures under the Fourth Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of her constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

182.   As described in more detail elsewhere in this Complaint, Defendants violated the rights of Plaintiff and minor H.S. by creating a false allegation that Plaintiff was engaged in abusive and/or neglectful treatment of minor H.S., which directly and

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

proximately caused minor H.S. to be forcibly removed from the custody and care of Plaintiff for a period of several months.

183.    The actions of Defendants were willful, knowing, purposeful, and were done with the understanding that such actions would reasonably cause both Plaintiff and H.S. to suffer severe emotional harm, as well as to place minor H.S. in a less secure and healthy environment than if H.S. remained with Plaintiff. Furthermore, such actions by Defendants were done with the specific intent to punish or otherwise teach Plaintiff a lesson in retaliation for Plaintiff's decision to continue to complain over the phone and in writing to supervisory and managerial employees of Defendant COLA and DCFS.

184.    The actions of Defendants – including but not limited to Defendants OBAKHUME and DAVIS in particular – coincided with the timing of Plaintiff choosing to complain to Defendants IBARRA and YOKOYAMA. On information and belief, Plaintiff asserts that Defendants DAVIS, IBARRA, YOKOYAMA, BROWNING, and other unknown individuals engaged in supervisory and/or managerial roles in DCFS as employees of Defendant COLA aided, assisted, ordered, participated in, conspired with, approved of and/or aided and abetted the conduct of Defendants OBAKHUME and DAVIS, who, on October 30, 2015 or shortly thereafter, engaged in false and malicious representations regarding Plaintiff and her treatment and care of minor H.S. for the specific purpose of having minor H.S.

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

COMPLAINT FOR DAMAGES

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626)446.6454

removed from her care – which was contrary to the best interests and needs of H.S. and done solely to inflict harm upon Plaintiff.

185.   Defendants' conduct, as set forth above, was the direct and proximate cause of severe and ongoing injury to Plaintiff and to H.S., as stated elsewhere in this complaint.

186.   In addition, the individual Defendants who worked for Defendant COLA who are government officials, deliberately engaged in corruption, retaliation and violations of Plaintiffs clearly established constitutional rights.  As such, and by the nature of their conduct, the individual defendants are not entitled to qualified immunity.  Punitive damages are sought against the individual defendants employed by Defendant COLA according to proof.

## SIXTH CAUSE OF ACTION

### Violation of Civil Rights Under 42 U.S.C. § 1983 – Monell Claim

### Against Defendants COLA, YOKOYAMA, BROWNING, IBARRA,

### And Doe Defendants 1-50

187.   Plaintiffs hereby incorporate the preceding paragraphs as though fully set forth herein.

188.   Defendant COLA, by and through the individual policymakers and/or supervisory officials – including but not limited to Defendants YOKOYAMA, BROWNING, IBARRA, and unknown Doe Defendants – improperly, inadequately, or with deliberate indifference to the constitutional rights of persons, grossly negligently, or with reckless disregard for constitutional rights, failed to properly

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

train, supervise, retrain, monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants DAVIS, OBAKHUME, and SHORT, with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the law of the State of California, the unconstitutional enforcement of local ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and reversed on other grounds sub nom. City of Los Angeles v. Heller, 106 S.Ct. 1573 (1986), and Larez v. Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

189.   Defendants, including but not necessarily limited to Defendants COLA, YOKOYAMA, IBARRA, and BROWNING, were responsible for the investigation into misconduct committed by individual employees and other individually named Defendants, and disciplining the same.

190.   A set forth in more detail, above, Plaintiff complained directly to Defendants YOKOYAMA and IBARRA, and otherwise caused Defendant BROWNING to be expressly aware of the misconduct, both in terms of sexual harassment by Defendant OBAKHUME as well as the denial of funding and due process by OBAKHUME, DAVIS, and SHORT, yet Defendants YOKOYAMA, IBARRA, and BROWNING refused to address the policies, practices, and procedures in existence at the Vermont Corridor office that allowed such violations of rights to occur.

COMPLAINT FOR DAMAGES

191.   The policies, customs, and practices of Defendants herein described, had the following natural and foreseeable results, which were in violation of the civil rights of Plaintiff, H.S., and others:

a.   Ignoring complaints of misconduct by subordinate employees, including but not limited to complaints of sexual harassment, withholding funds, refusing to coordinate parental visits, and demanding that Plaintiff adjust her schedule due to defendant social workers consistently arriving 2-3 hours later than scheduled without justification;

b.   Using the false assertion that individual employees are "in fear for their safety" to justify not setting up parental visits, refusing to cooperate with guardians of minors, to imply that individuals that question or criticize actions are dangerous or unfit to care for minor children, or otherwise justify not performing their duties in general;

c.   Protecting social workers from criticism or discipline by encouraging social workers to make knowingly false allegations of neglect and/or abuse against those that make complaints against them, with the specific purpose of undermining or otherwise casting doubt on the complaints or the reliability of the complainants; and

d.   Withholding funding to care providers or other legal guardians of minor children to the financial benefit of individual DCFS offices specifically and Defendant COLA generally.

192.   Defendant COLA, by and through the policymakers – including but not limited to Defendants YOKOYAMA, IBARRA, and BROWNING – owed a duty to Plaintiff and others at all times to establish, implement, and follow policies, procedures, customs, and/or practices which confirm and provide for the protections guaranteed them under the United States Constitution, including the 1st, 4th, 5th, and 14th

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

Amendments; to use reasonable care to select, supervise, train, control, and review the actions of all of their agents, officers, and employees.

193.   Instead, Defendants engaged in the above-described policies, practices, and customs, all of which is not unique to Plaintiff or H.S. alone or constitutes an isolated incident, but is in fact a pervasive policy, practice, and custom of which Defendants COLA, YOKOYAMA, and BROWNING are expressly aware.

194.   The injuries suffered by Plaintiff, as described elsewhere herein, were directly, proximately, and foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and unwritten, that at all relevant times were in full force and effect by Defendants and their employees, which were put in place or otherwise allowed to remain in place due to the tacit agreement of Defendants, various supervisors, managers, and policymakers – including but not limited to Defendants YOKOYAMA, IBARRA, and BROWNING in particular – and was further exacerbated by their refusal to properly investigate such misconduct of other individuals under their supervision and authority, or discipline the same.

195.   Defendants COLA, YOKOYAMA, IBARRA, and BROWNING knew, or should have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it would cause Plaintiff, and others to be injured and damages by the wrongful acts and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

196.   The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiff and H.S. herein.

//

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES
150 N. SANTA ANITA AVENUE, SUITE 200
ARCADIA, CALIFORNIA 91006
PHONE (626) 446.6442, FACSIMILE (626) 446.6454

COMPLAINT FOR DAMAGES

WHEREFORE, PLAINTIFF respectfully prays and seeks the following relief as to the Causes of Action stated above:

1.  For general damages according to proof at trial on each cause of action for which such damages are available,

2.  For special damages according to proof on each cause of action for which such damages are available;

3.  For punitive damages according to proof at trial on each cause of action for which such damages are available;

4.  For reasonable attorney fees and costs of suit, as allowed under the law;

5.  For such other relief as the Court deems proper and just.

6.  Civil penalties according to law; and

7.   Any and all further relief as the Court may deem just and proper.


## DEMAND FOR A JURY TRIAL

Plaintiff respectfully demands a jury trial for all claims asserted here.


RESPECTFULLY SUBMITTED,


Date: March 28, 2017

LAW OFFICES OF VINCENT W. DAVIS & ASSOCIATES

BY:  _____

Vincent W. Davis, Esq.
Daniel C. Sharpe, Esq.